IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| RENAEE N. HENRY, | ) ) | |
| Intervenor-Plaintiff, | ) ) | No.  03 C 6576 |
| v. | ) ) | |
| PEPSIAMERICAS, INC., et al., | ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Intervenor-plaintiff Renaeé Henry ("Henry") has moved for partial summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 as to her claim that PepsiAmericas, Inc. and Pepsi-Cola General Bottlers, Inc. (collectively "Pepsi")[1] violated the Family and Medical Leave Act of 1993 ("FMLA," 29 U.S.C. §§2601-2654[2]) by

---

[1] There is an issue as to whether Henry was employed by PepsiAmericas, Inc. or by its wholly owned subsidiary, Pepsi-Cola General Bottlers. Henry's superiors testified that they worked for PepsiAmericas, Inc., and one of those superiors, Rene Gibson ("Gibson"), appeared on behalf of PepsiAmericas, Inc. for a Rule 30(b)(6) deposition in this litigation. Nonetheless Pepsi has submitted an affidavit claiming that all employees at the facility where Henry worked were employees of Pepsi-Cola General Bottlers and that PepsiAmericas, Inc. has no employees. Because the parties have represented that they are trying to reach a stipulation as to the proper defendant, and because in any event a resolution of that issue is unnecessary to the ruling on Henry's motion, this Court withholds judgment as to which of the two Pepsi entities is the proper target of Henry's suit.

[2] All further references to the FMLA's statutory provisions will simply take form "Section--."

failing to reinstate her employment after she returned from an FMLA-entitled leave. Both parties have submitted statements of material fact as called for by this District Court's LR 56.1.[3] Because Henry has not shown that she is entitled to relief as a matter of law, her motion is denied.

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable

---

[3]LR 56.1 requires parties to submit evidentiary statements, and responses to such statements, to highlight which facts are disputed and which are agreed upon. This opinion cites to Henry's LR 56.1 statement as "H. St. ¶--," to Pepsi's as "P. St. ¶--" and to their respective responses as "H. Resp. ¶--" and "P. Resp. ¶--." Where either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. Memoranda and documents submitted by the parties are also identified by those same "H." and "P." designations.

2

jury could not return a verdict for the nonmovant (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts, viewed of course in the light most favorable to nonmovant Pepsi.

## Facts

Henry was hired as a dispatcher in the Conventional Sales Department at Pepsi's 35th Street Distribution Facility ("Facility") in Chicago, Illinois in September 1999 (P. St. ¶8). Within a few months of being hired, Henry also took on "payroll functions" in addition to her dispatch responsibilities (H. St. ¶9). Taken together, Henry's job duties included taking attendance, correcting payroll discrepancies, sending hand-held printers out for repair, acting as a liaison between other employees and Pepsi's human resources department in matters of leave and benefits, sending injured employees for drug testing and assigning work to drivers, helpers and merchandisers (P. St. ¶17). That congeries of duties was apparently shared among different positions at Pepsi's other three Chicago-area distribution facilities, for none of those facilities employed a conventional sales dispatcher (P. St. ¶23).

In May 2002[4] the Facility experienced a Teamsters labor union strike (P. St. ¶60). Because that strike placed a

---

[4] Because all other relevant events also occurred during 2002, other date references will omit the year designation.

significant financial strain on the Facility's operations, Pepsi's Regional Manager Jeff Guzzarde ("Guzzarde") and Human Resources Manager Rene Gibson ("Gibson") discussed the implementation of cost-saving measures at the Facility (id.). Although since February Guzzarde had also considered eliminating positions in various Facility departments, including Conventional Sales (P. St. ¶61), no position was formally eliminated at the Facility before August (P. St. ¶62).

On August 1 Henry began a two-week leave of absence due to stress and anxiety (H. St. ¶14). She gave Pepsi a note from her physician Dr. William Crevier confirming her need for leave (H. St. ¶14; P. Resp. ¶14). Upon learning that Henry had taken leave, and understanding that her condition could qualify her for FMLA leave, Gibson sent Henry an August 9 letter (H. Ex. 2) together with Pepsi's standard form (H. Ex. 3) entitled "Employer Response to Employee Request for Family or Medical Leave" (H. St. ¶19). Gibson's letter reads::

> This letter is to advise you that Family Medical Leave Act (FMLA) runs concurrently with Short Term Disability (STD). Therefore, enclosed you will find the appropriate FMLA documents [sic] please have your physician complete them and return to my attention.

Pepsi required employees requesting FMLA leave to submit both a medical certification and the standard form (P. St. ¶45), which reads (H. Ex. 3):

> You will be required to furnish medical certification of a serious health condition. You must furnish certification by

4

_____(insert date) (must be at least 15 days after you are notified of this requirement) or we may delay the commencement of your leave until the certification is submitted.

Gibson did not otherwise inform Henry of the consequences of failing to submit Pepsi's FMLA forms or medical certification. Henry does not recall completing the FMLA form, but she "thinks she sent the papers back" to Pepsi (P. St. ¶31). Henry did not keep copies of the form for her records, she does not recall asking her doctor to complete any forms and her doctors have no record of having completed those forms (P. St. ¶¶33, 37, 42).

When Henry's leave commenced, Pepsi temporarily reassigned her payroll duties to the Facility's Express Sales Secretary Vanessa Faulkner ("Faulkner") (P. St. ¶54). Faulkner took about an hour a week to perform those duties (P. St. ¶56). It is not clear who performed Henry's dispatch duties in her absence.

When Henry returned from her leave of absence on August 15, she resumed the duties associated with her dispatch position but did not resume the payroll functions (P. St. ¶66). Gibson did not restore the payroll functions because she believed that they had contributed to Henry's stress (P. Resp. ¶35) and because she realized that Faulkner's assumption of those duties gave Faulkner "a full-time job" (H. St. ¶38). Despite the reduction in responsibility, Henry's pay was not affected (id.)

After being told that her payroll duties were not being restored, Henry complained to Gibson that she did not have enough

5

work, claiming that her dispatch responsibilities occupied only two to four hours each day (H. St. ¶33). As a result Gibson and Guzzarde talked about eliminating Henry's position (H. St. ¶39. Guzzarde also discussed with the Facility's Office Manager Sharon Dellorta and the Conventional Sales Department's Sales Manager Eric Johnson the possibility of other employees absorbing Henry's duties. Guzzarde and Gibson then decided, in light of the financial constraints facing the Facility, that Henry's position should be eliminated, with her duties being absorbed by other employees (H. St. ¶40; H. Ex. 9 at No. 4; P. Resp. ¶40). On August 22 Gibson told Henry that the conventional dispatch position was being eliminated, so that her employment was being terminated effective immediately (H. St. ¶41).

## Henry's FMLA Claim

Henry claims that the reduction of her responsibilities and the consequent elimination of her position violated substantive rights guaranteed her by the FMLA. In particular she asserts that Pepsi violated Section 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided" by the FMLA.

At issue here are two substantive rights created by the FMLA. First, it "provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health

6

condition" (King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999); Section 2612(a)(1)(D)). And second, to effectuate that guaranty the statute also provides that any employee who takes such leave (Section 2614(a)(1)):

> shall be entitled, upon return from such leave--
>
>> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>>
>> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

Henry argues that she was entitled to FMLA leave and that Pepsi's elimination of her position following that leave denied her the right to reinstatement.

For its part, Pepsi initially urges that the facts do not show Henry was entitled to FMLA leave in the first instance. But even if her leave was FMLA-qualified, Pepsi argues that Henry was not entitled to reinstatement because her position would have been eliminated regardless of whether she took FMLA leave. This opinion considers those arguments in turn.

### Henry's Entitlement to FMLA Leave

As already indicated, Pepsi contends that Henry was not entitled to FMLA leave and that its protections do not apply because Henry never "requested or sought FMLA leave" (P. Mem. 6) and, in that respect, that she did not return the medical certification form Pepsi required of employees requesting leave

7

under the FMLA. But that argument ignores both FMLA regulations and well-established caselaw to the contrary.

To be eligible for leave under Section 2612(a)(1)(D) an employee must have a "serious health condition" that prevents her from performing her job (Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998)). Pepsi does not dispute that Henry had such a condition--it argues instead that Henry had an obligation to notify it that she was taking leave under the FMLA. Not so: It is not an employee's duty to designate her requested leave as FMLA-qualified, nor need she even mention the statute (29 C.F.R. §825.303(b)[5]). Indeed, "the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed" (Stoops, 141 F.3d at 312). Dr. Crevier's note, received by Pepsi on August 3, undoubtedly put Pepsi on such notice (H. Ex. 1)[6]:

---

[5] Further citations to the regulations in 29 C.F.R. will take the form "Reg. §--."

[6] Pepsi objects to the copy of Dr. Crevier's note submitted by Henry on the ground that it "lacks foundation and is hearsay and, therefore, is inadmissible evidence" (P. Resp. ¶14). That hearsay objection is nonsense--the document is offered to show the existence of notice to Pepsi, not for the truth of its contents. As for foundation, that objection is equally baseless: Pepsi attaches a copy of the same note as its own Ex. 13 in support of its LR 56.1 statement of additional facts, and it admits that it received the note on August 3.

8

> Mrs. Henry has severe anxiety and needs to be off work for at least one week beginning 8/1/02 through 8/11. If better she can return on 8/11.

Henry's failure to invoke the FMLA in notifying Pepsi of her need for leave is therefore of no consequence.

Pepsi then argues that Henry was not entitled to FMLA leave because she failed to submit medical certification of her FMLA-qualifying condition. True enough, an "employer may require certification from the employee's physician (or other health care provider) that the employee indeed has such a condition" (Rager v. Dade Behring, Inc., 210 F.3d 776, 777 (7th Cir. 2000); Section 2613(a)). But if the employer does so require, it must grant the employee 15 calendar days in which to submit the certification and must "notify the employee promptly and in writing of the 15 day deadline and of the consequences of not complying with it" (Rager, 210 F.3d at 777; Reg. §§825.301 and .305).

Pepsi notified Henry of its certification requirement in an August 9 letter. Henry therefore had until August 24 to provide such certification. But she was terminated <u>before</u> that--on August 22. Pepsi cannot contend in good conscience that Henry's failure to submit the certification bears on whether her leave was FMLA-qualified. Moreover, Pepsi's related assertion that "there is no evidence that Henry was prejudiced in any way" (P. Mem. 8) by its failure to allow her the requisite 15 days has no basis in the statute, regulations or relevant caselaw.

9

Because then Pepsi was on notice that Henry needed FMLA-qualifying leave, and because it did not allow her sufficient time to submit the certification it required for such leave, Henry was entitled as a matter of law to FMLA leave and its associated protections. That leads to consideration of Pepsi's second defense to Henry's claim.

Henry's Entitlement to Reinstatement

At its core, Henry's FMLA claim is that she was denied her statutory right to reinstatement when Pepsi reinstated her only to a partial position and then terminated her because that position was not full-time. While the parties treat as separate issues Henry's reinstatement to a position with reduced responsibility and her termination a week later, those events were, as Henry says, "inextricably linked" (H. Mem. 11). This opinion will treat them as such, for Henry's real quarrel is not with Pepsi's failure to restore her payroll functions but with its elimination of her position. On that score Pepsi argues that it did not deny Henry any FMLA-guaranteed rights upon her return from leave because she would not have been entitled to the benefit she claims--reinstatement to the conventional dispatch position--regardless of whether she took FMLA leave.

Generally when an employee alleges a deprivation of FMLA's substantive guaranties, she need only demonstrate by a preponderance of the evidence her entitlement to the benefit she

claims (<u>Diaz v. Ft. Wayne Foundry Corp.</u>, 131 F.3d 711, 713 (7th Cir. 1997)). Having established her entitlement to FMLA leave, Henry observes correctly that she is entitled to reinstatement to the extent the FMLA guarantees it.

But the FMLA-guaranteed right to reinstatement is not absolute (<u>Kohls v. Beverly Enters. Wis., Inc.</u>, 259 F.3d 799, 804 (7th Cir. 2001)). Section 2614(a)(3)(B) specifies:

> Nothing in this section shall be construed to entitle any restored employee to--
>
> \* \* \*
>
> (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

Thus an employer does not infringe any FMLA-guaranteed rights by firing an employee who would have been terminated regardless of whether she took FMLA leave.

Hence the relevant question in denial-of-reinstatement cases centers on "why the employee was not reinstated" (<u>Kohls</u>, 259 F.3d at 805). Where as here an employee establishes by a preponderance that she is entitled to reinstatement under the FMLA, "[t]he employer may then present evidence to show that the employee would not have been entitled to her position even if she had not taken leave" (<u>Kohls</u>, 259 F.3d at 804). Pepsi argues that Henry's termination was a cost-saving measure unrelated to her FMLA leave, and it points to a number of facts in support of that

assertion.

Pepsi first points out that for some six months before Henry's termination Guzzarde had explored the possibility of eliminating various positions (including Henry's) at the Facility. Henry also admits that Gibson and Guzzarde discussed various cost-saving measures before and after the costly May 2002 Teamsters strike at the Facility. Only the Facility, among Pepsi's four Chicago-area distribution facilities, employed a conventional dispatcher--at the other three, managers performed conventional dispatch duties (P. St. ¶22, 23). And it is undisputed that after Henry's termination she was not replaced--her duties were rather absorbed by existing Pepsi employees. All of those facts tend to support Pepsi's assertion that at least in prima facie terms Henry was not entitled to the conventional dispatch position upon her return from FMLA leave, because it proffered a threshold showing of a legitimate economic reason for eliminating that position unrelated to that leave.

After an employer has thus presented evidence to show the employee would not have been entitled to the position in any event, the employee must overcome that assertion, "as she carries the burden of demonstrating her right to the entitlement" (Kohls, 259 F.3d at 804). Henry musters two arguments in an attempt to do so. But neither establishes her entitlement to the conventional dispatch position as a matter of law.

12

First Henry observes that the timing of Pepsi's actions and its own admissions demonstrate that her payroll functions were reassigned to Faulkner as a direct result of her leave. She argues that Pepsi thus cannot show it would have taken that action, which ultimately resulted in the elimination of her position, had she not taken FMLA leave. But while it is undisputed that Henry's leave prompted the temporary reassignment of her payroll functions, the decisions to make that reassignment permanent and then to eliminate Henry's part-time conventional dispatch position were--according to Pepsi, whose assertion must be credited in the present Rule 56 context--made because the temporary reassignment enabled Gibson and Guzzarde to realize that the conventional dispatch position was unnecessary.

Kohls addressed an analogous situation in which an employer did not discover deficiencies in an employee's work until after the employee took leave. Confronted with the argument that the timing of the employer's actions demonstrated that the employee's termination would not have occurred absent the leave, Kohls, 259 F.3d at 806 held "[t]he fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee." So too, if Pepsi's version of events is credited, the fact that Henry's FMLA leave allowed Pepsi to discover that her duties were easily absorbed by other employees should not be a bar to what would be

Pepsi's otherwise legitimate personnel decision.

Next Henry attacks the sufficiency of Pepsi's evidence as to its reasons for her termination. She claims that she was terminated "simply because her position no longer [was] full time" (H. Mem. 12), arguing that Pepsi didn't have a legitimate reason for terminating her because it has not been able to produce evidence of pressing budget constraints at the Facility in 2002 or evidence of any corporate directives regarding layoffs, reductions in force or streamlining at the Facility. But it must be remembered that for Rule 56 purposes Pepsi's version must be credited, so that it cannot be held that a factfinder would necessarily reject the evidence presented by Pepsi in support of its assertion that Henry's position was unnecessary.

In sum, it cannot be said as a matter of law that Henry has overcome the evidence proffered by Pepsi in support of its assertion that her position would have been eliminated regardless of whether she took FMLA leave. And so Henry is not entitled to judgment as a matter of law with respect to her claim that Pepsi's termination of her employment violated Section 2615(a)(1).

## Conclusion

For the reasons stated here, Henry's Rule 56 motion for summary judgment is denied. Because the parties have previously

14

submitted, and this Court has issued, a final pretrial order, and because this Court has contemporaneously resolved the parties' motions in limine on which briefing has just been completed, this case will be set for trial when all parties have indicated their dates of unavailability during the next several months.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 21, 2005